Good morning, Your Honors. Alan M. Answorth is appearing before you today in the matter of Pedro Mendiola. Today is the sixth anniversary of the date on which the immigration judge granted for a second time the relief of Convention Against Torture for this individual. The Board of Immigration Appeals twice rejected the immigration judge's decisions and grant. We're here today to determine whether the Board's decision was the correct one. We argue that it was not. We have the story of Pedro Mendiola as a man who was born in the Philippines, returned to the Philippines in 1995, and suffered a life-threatening attack made upon him by police officials and representatives of the Philippine government. He was stabbed. He almost died in the street. He was rescued, taken to a hospital and survived. We do know the facts. I mean, this was a long time ago. Government has since changed. But we do know the facts on the record. We review the BIA's decision, right? Not the IJ's decision. We review the BIA's decision, not the IJ's decision. That is correct. But the Board failed to properly weigh and consider all the factors that the immigration judge carefully took under consideration, and they're in the judge's decision. The Board, where the judge wrote, I believe, six or eight pages of the factors that he considered in granting relief, the Board reduced the factors that it considered to only five lines, six lines. For example, where the judge went paragraph by paragraph through country reports to conclude that conditions in the Philippines had not changed at all. The judge stated remarkably the country reports for 1995 and 2005 mirror each other. But the Board chose to focus on these factors for denial. The judge made no mention or the country reports have no mention about land seizures as a trigger to torture. Isn't that true? It's true, but it's not material to the case. Why not? If that's the problem your client faces, how is that not material? It's not material because of the way that the torture was triggered. Torture was triggered in this case because the petitioner inquired about government's actions, the seizure of property. It could have been land, bank accounts, personal assets. It was a question and a threat, a perceived threat to government authority. Those sound to me like judgments. And isn't that the kind of judgment that the BIA is charged with making? I'm sorry, Your Honor. Those sound to me like judgments. And aren't those the kind of judgments the BIA? I mean, you can look at any problem. This is sort of the nature of legal reasoning. The question is the level of generality at which you look at an issue. In some sense, if you look at the great enough level of generality, all cases are very similar. The more specific you get, the more different they are. And in this case, the Board chose to look at that particular level of generality. There's no retaliation for inquiring about land seizures. Why isn't that its choice to make? It can be its choice to make, but it cannot ignore all the factors in the case. Well, it didn't. The point is it decided that the IJ cited the country report's more general description without discussing the more specific circumstance faced by your client. I mean, the mirror image, our court requires the government, when it argues changed country conditions, requires the agency, rather, to apply specific analysis based on the circumstances of the petitioner. That's what the BIA here is doing with regard to your client. It's saying, okay, maybe widespread police corruption, maybe abuse and so forth, but there's nothing there that says that's as a result of a particular land seizure dispute in a particular community. There's nothing that suggests that your client has run afoul of the national police hierarchy, that it's anything more than a local dispute, is there? If there is, then we need to know about it. But if there isn't, then the BIA is saying, look, this isn't the same thing that applies to this person. Well, the local police in, let's say, our community, is not the same as the local police in the Philippines. As the immigration judge cited, the Philippine police is under the authority of the Interior, the Department of the Interior. That's a national office in the Philippines. And the judge... In contrast to what happened to him quite some time ago, didn't his parents go back to the Philippines fairly recently without incident? I can't remember that. Isn't that in the record at 217, 218, 223, and 236? With all due respect, Your Honor, the attack on the petitioner was not based on, let's say, his immediate family, but the issue of a threat or a question of authority that scratched at the deep corruption in government, and he was attacked. And the immigration judge and the board and even government counsel in its brief does not dispute that he was attacked. He suffered torture at the hands of the government. The question is, I believe, if he were to return to the Philippines, what is the likelihood that he would suffer torture at this, at the point in time that he would return? The country reports, even the 2012 country reports, the most recent issue, carries the same almost word-for-word statements that the Philippine government has. And that the corruption remains deep within the police, within the military. But the question is whether or not this is something that is likely to threaten your client. And the board looked at it and concluded not. I mean, we must find that they are clearly wrong in that. Well, I think they are clearly wrong. Well, of course, but it's your client you're talking about. Well, yes and no. Clearly wrong. When did this happen? 1995, March of 1995. Almost 20 years ago? 18. 19 years ago. You've got about two and a half minutes left. Do you want to save it for rebuttal? I will save for rebuttal, yes. Thank you. May it please the Court, my name is Brooke Maurer for the respondent, the Attorney General. In advance, I want to apologize. I'm just getting over a cold and I cough, so I apologize. We all are. Today, right now, before this Court, is whether the substantial evidence supports the agency's reversal of the CAT determination. Contrary to what the petitioner asserts, the board did do a very specific re-reading of the facts of the report. They looked through and pointed to five specific areas where they felt that the IJ's determination was in fact speculative. It should be noted that the case was first remanded back because the IJ failed to properly adhere to the matter of JFF, which is basically there has to be facts supporting a hypothetical chain of events. So they sent it back to the IJ, it came back up, and once again, the board reviewed it, reviewed the decision and found that he erroneously granted it because he failed to, the petitioner failed to meet his burden of proof. Now, this decision came out a few years ago. Since then, our Court's case law with regard to the, in particular with regard to the application of a clearly erroneous standard by the board has, well, I haven't seen recent board decisions, I guess all of ours are old, but I suspect has caused more attention to the application of the standard. In this instance, the board recited the clearly erroneous standard. Is it your contention that in fact it applied that standard, and if so, why? In this case, we're not arguing that they found anything that the IJ did was clearly erroneous. They basically, like, they are supposed to review the findings of facts for that, but they also are adjudged for the IJ's application of JFF would be reviewed under the de novo standard, which is what they applied in this case. De novo standard? Under the application of JFF to the actual facts, so that would be, like, the mixed question. So therefore, they applied that de novo review of that because they initially remanded under JFF, noting in the first remand that the petitioners, that the IJ even noted that there were no real facts of record, that they had just been convinced he had really made no factual findings and just agreed with the petitioner's determinations. And based on the previous matter of JFF, but from the AG, they sent it back because there has to be support in the record, and it can't be just those hypothetical suppositions chained together that is worthy of supporting, you know, the grant of deferral or removal. Here the board reviewed how the IJ applied JFF because, in fact, this is a chain of hypothetical suppositions that the government may or may not still have people in there that would be interested in the petitioner. There's nothing in the record that points to any direct evidence that the petitioner was sought after. For what reason it was sought after, I mean, the petitioner conceded earlier, and in its brief, that he was targeted when he made a land inquiry onto his aunt's property. And now there's nothing 19 years later in the record that supports the fact that these people are still interested, nor that they even have anybody left in power that would actually matter. So looking at all of those facts together, the board determined that the hypothetical chain of events that the IJ construed together was insufficient for the petitioner to meet his burden of proof. Sorry. Okay. Thank you. Your Honor, in Zeng v. Holder, this Court held that the board must consider all the factors that were raised in a case. The board simply did not do that in this case. Well, how do we know that? I mean, you say that. They said they did. They said they applied the right standard. Actions of agencies like actions of district courts, I mean, are presumed to be following the law. There's certainly no indication. They don't have to cite everything in the record. It's not a question of length. It's not a question of the number of words used. Well, the country reports that the judge relied upon and cited in his oral decisions show us that the Philippine government resorts multiple times to inflicting torture on prisoners and people that they presume. The board said, fine, we accept that. We don't dispute that. The IJ found that. There's nothing to say about it. But then they say, but there's nothing connecting your client's situation to that regime. And that's what they focused on. They focused on the things where they disagreed or where they had an issue. What's the point of having them reiterate the things in the IJ's decision that they agree with? Well, Kat, to my understanding, does not require that one be necessarily targeted by the government. He suffered a tortuous trauma. He was stabbed with the idea that he should die. When he survived, he was told through a third party that he must leave the country or be killed. Now, the board says that there was no specific evidence of torture, that he was singled out. But he was singled out. Okay. Thank you.
judges: Rakoff, Kozinski, Clifton